| | |
|---|---|
| KRISTOPHER LEE ROYBAL, | Case No. 14-CV-5042 (SRN/TNL) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| TOM ROY, Commissioner of Corrections, | |
| Respondent. | |

Kristopher Lee Roybal, pro se.

Peter R. Marker, RAMSEY COUNTY ATTORNEY'S OFFICE, for respondent.

This matter is before the undersigned United States Magistrate Judge on petitioner Kristopher Lee Roybal's petition for a writ of habeas corpus under 28 U.S.C. § 2254. *See* Petition [ECF No. 1]. The petition has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. Based on a review of Roybal's petition and the subsequent briefing by both parties, this Court recommends that Roybal's petition be denied and that this action be dismissed with prejudice.

## I. BACKGROUND

The Minnesota Court of Appeals relates the following details about the events surrounding Roybal's arrest:

> In the early morning hours of March 27, 2012, Minnesota State Patrol Trooper Peter Schultz was on patrol traveling eastbound on Interstate 94. He witnessed [Roybal's] vehicle swerve and cross two solid white lines at the apex of the exit on Marion Street. When the squad car's overhead lights were activated, an automated and dash-mounted camera started recording.

[Roybal] promptly pulled over, and Trooper Schultz approached the driver's-side window.  He identified [Roybal] as the driver.  He noticed that [Roybal]'s eyes were watery and bloodshot and that [Roybal] had trouble locating his proof of insurance when asked for it.  Trooper Schultz then had [Roybal] get out of his vehicle to perform several field sobriety tests (which indicated impairment) and a preliminary breath test (which showed an alcohol concentration of .149).  [Roybal] was placed under arrest at approximately 2:45 a.m., but was not initially read his *Miranda* rights.

Trooper Schultz transported [Roybal] to the Ramsey County Law Enforcement Center (LEC) in his squad car.  The squad-car recording reveals that the following conversation took place:

SCHULTZ:  You okay with doing a urine test?  You ever done one of those before?  That's alright with you?

[Pause]

[ROYBAL]:  Do you think I'm on other drugs or something?

SCHULTZ:  It's either going to be urine or blood and I'm assuming you don't want to get stabbed by a needle.

[Pause]

[ROYBAL]:  What made you want to do a Breathalyzer on me?

SCHULTZ:  I stopped you because you . . . I stopped you because when you took that ramp you cut across the median.

[ROYBAL]:  Oh.

[Pause]

[ROYBAL]:  You know why I cut across that median?

> SCHULTZ:  Why's that?
>
> [ROYBAL]:  Because my passenger told me, "hey you need to get off this ramp."
>
> SCHULTZ:  Giving you bad directions?
>
> [ROYBAL]:  Yeah.
>
> After arriving at the Ramsey County LEC, [Roybal] was read the implied consent advisory at 3:12 a.m.  He was informed of his right to consult with counsel, but chose not to contact an attorney.  [Roybal] agreed to give a urine sample at 3:21 a.m., which, when tested, showed an alcohol concentration of .15.  Trooper Schultz did not attempt to obtain a warrant for the urine sample.  [Roybal] was read his *Miranda* rights at 3:44 a.m. and declined to continue speaking with Trooper Schultz.

*State v. Roybal*, No. A13-0037, 2014 WL 3557910, at *1 (Minn. Ct. App. July 21, 2014).

Roybal was charged with two counts of first-degree driving while intoxicated in violation of Minn. Stat. § 169A.20, subd. 1(1) (prohibiting operation of a motor vehicle while "under the influence of alcohol") and subd. 1(5) (prohibiting operation of a motor vehicle while "the person's alcohol concentration at the time, or as measured within two hours of the time, of driving, operating, or being in physical control of the motor vehicle is 0.08 or more").  *Roybal*, 2014 WL 3557910, at *1.  Roybal pleaded not guilty to the charges and moved to suppress evidence related to the traffic stop on several grounds, including (1) that Schultz had lacked a reasonable, articulable suspicion to effect the traffic stop and thus violated the Fourth Amendment when he pulled Roybal over, and (2) that Schultz's failure to inform Roybal of his *Miranda* rights before administering the field-sobriety tests at the scene of the traffic stop constituted a violation of his rights under the Fifth and Sixth Amendments.  After an omnibus hearing at which Schultz testified, the trial court denied Roybal's motion to suppress.  With

respect to the alleged Fourth Amendment violations, the trial court credited Schultz's testimony that Roybal had in fact swerved across lanes, thus creating a reasonable, articulable suspicion for the stop. *Id*. at *2. The trial court also denied Roybal's *Miranda* challenge, finding that Roybal was not in custody at the time the field-sobriety tests were performed and that field-sobriety tests "involve physical ability and therefore are non-testimonial." App'x at 84 [ECF No. 14-1].[1]

Roybal stipulated to the state's evidence in order to preserve the pretrial issues for appeal. *See* Minn. R. Crim. P. 26.01, subd. 4; *Roybal*, 2014 WL 3557910, at *2. Based on that stipulated evidence, the trial court found Roybal guilty of first-degree driving while intoxicated in violation of § 169A.20, subd. 1(5) and sentenced Roybal to a 50-month term of imprisonment. *See* Minn. Stat. § 169A.24, subd. 1(1).

During the pendency of Roybal's appeal before the Minnesota Court of Appeals, the United States Supreme Court found in *Missouri v. McNeely* that "the natural metabolization of alcohol in the bloodstream" does not present "a *per se* exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases." 133 S. Ct. 1552, 1556 (2013). Roybal filed a post-conviction motion in the trial court arguing that his conviction should be vacated in light of *McNeely*, as (he argued) the urine test taken following his arrest constituted an unconstitutional search in violation of the Fourth Amendment. The trial court denied Roybal's motion without reaching the merits, finding instead that the motion should be denied for failure to argue that the urine test was unconstitutional at the pretrial omnibus hearing. *See* App'x at 47-50.

---

[1]Wherever this Court cites to the appendix filed by respondent, this Court cites to the consecutive pagination found in the bottom-right corner of the document.

On direct appeal, the Minnesota Court of Appeals considered both the issues raised by Roybal immediately after his conviction and the *McNeely* claim raised in his motion for post-conviction relief. With respect to the Fourth Amendment issues raised by the traffic stop, the Minnesota Court of Appeals found that the trial court's findings regarding Schultz's testimony and credibility were not clearly erroneous, and thus determined that the "district court did not err in concluding that Trooper Schultz had an objectively reasonable basis to stop [Roybal's] vehicle." *Roybal*, 2014 WL 3557910, at *4. With respect to the *Miranda* issues, the Minnesota Court of Appeals noted that Roybal's argument had shifted between the time of the pretrial omnibus hearing and the time of the appeal. "At the omnibus hearing, [Roybal] argued that, because he should have been given Miranda warnings before Trooper Schultz administered any field sobriety tests, evidence of those test results should have been suppressed. On appeal, he makes a different argument: that his squad-car admission should have been suppressed." *Id*. Despite Roybal having raised the latter argument for the first time on appeal, the Minnesota Court of Appeals proceeded to examine the issue "in the interests of justice." *Id*. That court determined that Roybal had been in custody when he made his statements to Schultz in the squad car, but also found that the admission had not been made in response to direct questioning or interrogation by Schultz, as Roybal had "initiated the conversation at issue and then offered an explanation for his driving behavior." *Id*. at *6. Because the admission was not made in response to interrogation (concluded the Minnesota Court of Appeals), there was no need to suppress the statement. *Id*.

Finally, the Minnesota Court of Appeals proceeded to examine the *McNeely* claim raised by Roybal in his post-conviction petition. That court began by finding that the trial court had

erred by summarily denying the post-conviction petition for failure to raise the claim at the omnibus hearing. *Id*. Nevertheless, the Minnesota Court of Appeals concluded that the *McNeely* claim was without merit, as Roybal had voluntarily consented to the urine test. Roybal had been read an implied-consent advisory, indicated that he understood the advisory and did not wish to consult with an attorney, and agreed to provide the urine sample less than an hour after arriving at the jail. *Id*. at *7. Further, the Minnesota Court of Appeals found that nothing in the record indicated Roybal's consent had been coerced. *Id*. The Minnesota Court of Appeals also rejected Roybal's suggestion that Minnesota's implied-consent law is unconstitutional because it conditions the privilege to drive on the waiver of the right to be free from unreasonable searches and seizures. *Id*. at *8 (citing *Stevens v. Comm'r of Public Safety*, 850 N.W.2d 717 (Minn. Ct. App. 2014)).

Accordingly, the Minnesota Court of Appeals affirmed Roybal's conviction and sentence. Roybal petitioned the Minnesota Supreme Court for review, but that petition was denied. Roybal then filed a petition for a writ of habeas corpus pursuant to § 2254 in this District; that petition is now before this Court.

Roybal raises three grounds for relief in his habeas petition. First, Roybal contends that Schultz had no reasonable, articulable suspicion for the traffic stop, and thus that the stop was effected in violation of the Fourth Amendment. Second, Roybal contends that he "was entitled to a Miranda Warning at the time of his arrest and before Trooper Schultz initiated an invitation to continue talking at the inception of the arrest." Petition at 6. Third, Roybal contends that *McNeely* requires that his conviction be vacated, as he argued in his motion for post-conviction

relief.  This Court ordered respondent to answer Roybal's petition and allowed Roybal an

opportunity to reply to that answer.  This matter is now fully briefed and ripe for disposition.

## II.  ANALYSIS

### A.  *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the

standards that govern this Court's substantive review of Roybal's habeas corpus claim.  The

relevant portion of AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim —
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed

§ 2254(d)(1) and how it should be applied by the federal district courts.  The Supreme Court

recognized that

> a state-court decision can be "contrary to" this Court's clearly
> established precedent in two ways.  First, a state-court decision is
> contrary to this Court's precedent if the state court arrives at a
> conclusion opposite to that reached by this Court on a question of
> law.  Second, a state-court decision is also contrary to this Court's
> precedent if the state court confronts facts that are materially
> indistinguishable from a relevant Supreme Court precedent and
> arrives at a result opposite to ours.

*Id*. at 405.

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The Supreme Court also explained that

> A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 409, 411.

A writ of habeas corpus may also be available where the state court's resolution of a prisoner's criminal case is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief can be granted if the conviction is based on findings of fact that could not reasonably be derived from the state court evidentiary record. When reviewing a state court decision, however, "a federal court . . . presumes that the state court's factual determinations are correct; this presumption may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000). In addition, 28 U.S.C. § 2254(e)(1) provides that

> [i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Needless to say, a federal district court is not allowed to conduct its own de novo review of a prisoner's constitutional claims. *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter."). "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and quotations omitted). Habeas relief cannot be granted unless the petitioner has identified and substantiated a specific error committed by the state courts. Moreover, the petitioner must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court. Finally, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

### B. Traffic Stop and the Fourth Amendment

In Ground One of his habeas petition, Roybal contends that Schultz lacked a reasonable, articulable suspicion to effect a traffic stop; that the trial court erred in finding that Schultz had a reasonable, articulable suspicion for the traffic stop; and that his conviction should be vacated as a result of the putatively illegal seizure. *See* Petition at 5; Pet'r Memorandum at 3-8 [ECF No. 3]. As explained below, Ground One must fail for at least two reasons.

First, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or

seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). In other words, in order for this Court to provide relief on Roybal's Fourth Amendment claim, Roybal must show not only that his claim is meritorious, but also that he was not provided an opportunity for full and fair litigation of that claim in the state courts. In order to show that he was not provided an opportunity for full and fair litigation of the claim, Roybal is required to show that "the State 'provided no corrective procedures at all to address the alleged Fourth Amendment violation' or that the State 'provided a corrective mechanism, but [he] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Chavez v. Weber*, 497 F.3d 796, 802 (8th Cir. 2007) (quoting *Willett v. Lockhart*, 37 F.3d 1265, 1271 (8th Cir. 1994) (en banc)).

Roybal had a full and fair opportunity to litigate the legality of the traffic stop in state court. That issue was one of the focuses of the pretrial hearing described above, at which the trial court determined that Schultz had a reasonable, articulable suspicion sufficient to effect the traffic stop. The question was again raised upon appeal, where the Minnesota Court of Appeals determined that the trial court's findings on the legality of the traffic stop were not clearly erroneous. *See Roybal*, 2014 WL 3557910, at *3-4. Indeed, Roybal does not argue that the state courts failed to provide him with a full and fair opportunity to litigate this claim. Accordingly, Ground One of Roybal's petition must be dismissed pursuant to *Stone*.

Second, even if Ground One of Roybal's petition were not foreclosed by *Stone*, Roybal nevertheless would not be entitled to relief. The trial court's finding that Schultz had a reasonable, articulable suspicion to effect the traffic stop was premised on factual findings that Schultz's testimony was credible and that Roybal had, in fact, swerved across lanes while

driving, thus establishing a lawful basis for effecting the traffic stop. Habeas relief may only be granted if those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). This Court cannot conclude that the trial court's credibility determination, or its finding that Roybal had in fact swerved while driving, was "an unreasonable determination of the facts" presented in state court.

Roybal attacks Schultz's credibility by pointing to a handful of inconsistencies in Schultz's testimony — for example, Schultz initially testified that Roybal had been driving a white vehicle, when the vehicle was black, *see* Petition at 5; Pet'r Memorandum at 3-7 — but these inconsistencies are, on the whole, exceedingly minor, largely irrelevant to the question of whether Roybal had driven erratically prior to the traffic stop, and not at all surprising from a witness attempting to recall details of an event that occurred more than two months prior. Moreover, Schultz's mistaken testimony was drawn out by Roybal's defense counsel on cross-examination. *See* Reply at 7-8 [ECF No. 17]. Nevertheless, the trial court concluded that Schultz's testimony regarding the circumstances of the traffic stop was credible. *See* App'x at 84. And apart from attacking Schultz's credibility, Roybal by all indications offered no evidence whatsoever to the trial court tending to show that his driving had been within the rules of the road. This Court cannot conclude that the trial court's factual findings were "objectively unreasonable based on the record" before it. *Smulls v. Roper*, 535 F.3d 853, 864 (8th Cir. 2008) (en banc).

Because Ground One is both precluded under *Stone* and without merit, this Court recommends that Ground One be dismissed with prejudice.

### C.  Miranda *Claim*

About one hour passed between the time that Roybal was arrested and the time Schultz gave Roybal a *Miranda* warning.  During that gap, Roybal acknowledged to Schultz that he had driven erratically before being pulled over:

> [ROYBAL]:  What made you want to do a Breathalyzer on me?
>
> SCHULTZ:  I stopped you because you . . . I stopped you because when you took that ramp you cut across the median.
>
> [ROYBAL]:  Oh.
>
> [Pause]
>
> [ROYBAL]:  You know why I cut across that median?
>
> SCHULTZ:  Why's that?
>
> [ROYBAL]:  Because my passenger told me, "hey you need to get off this ramp."
>
> SCHULTZ:  Giving you bad directions?
>
> [ROYBAL]:  Yeah.

*Roybal*, 2014 WL 3557910, at *1.  Roybal alleges in Ground Two that he was entitled to a *Miranda* warning at the time he was placed under arrest and that any statements offered by him following the arrest but before the *Miranda* warning was given should not have been admitted into evidence.[2]

---

[2]In his original motion to suppress evidence, Roybal argued that Schultz's failure to provide a *Miranda* warning before conducting field-sobriety tests at the scene of the traffic stop required that the results of those tests be excluded from evidence.  *See* App'x at 94-96.  Roybal has not renewed this claim — a claim that was not fully exhausted in the state courts — in his habeas petition or subsequent briefing.

Respondent concedes in his answer — and the Minnesota Court of Appeals found on direct appeal — that Roybal was in custody for purposes of *Miranda* when he made the statements referenced above. *See* ECF No. 13 at 14 n.6; *Roybal*, 2014 WL 3557910, at *5. The Minnesota Court of Appeals concluded, however, that because the statements offered by Roybal were not the product of interrogation, those statements did not fall under the scope of *Miranda*. *Id*. (citing *Rhode Island v. Innis*, 446 U.S. 291, 299-301 (1980)). The appellate court explained as follows:

> We first observe that the interaction in the squad car was conversational. Trooper Schultz asked appellant about whether he would prefer a urine test or a blood test. After that question, Trooper Schultz made no other inquiry of appellant, except as initiated by appellant's statements. Our review of the record convinces us that appellant's admission of having "cut across that median" was not made in response to interrogation. Appellant initiated the conversation when he asked Trooper Schultz why he wanted appellant to do a breath test, which Trooper Schultz seems to have interpreted as appellant asking why he had stopped appellant's vehicle. The electronic squad-car recording reveals that appellant responds "Oh" and, after a lengthy pause, he offers an explanation for his driving. The explanation was not in response to any direct questioning by Trooper Schultz."

*Id.* (footnote omitted).

This Court entirely agrees with the analysis provided by the Minnesota Court of Appeals. To begin, that court correctly set forth the legal standards under federal law regarding the circumstances in which statements must be excluded under *Miranda*. *Id*. Moreover, the Minnesota Court of Appeals's application of that law to the evidence before it was reasonable. As reflected in the transcript of the conversation, the discussion about the circumstances of the traffic stop was initiated by Roybal, not Schultz. *Id*. at *1 ("[ROYBAL]: What made you want to do a Breathalyzer on me? SCHULTZ: I stopped you because you . . . I stopped you because

-13-

when you took that ramp you cut across the median.").  Although Roybal is correct that Schultz's answer was not entirely germane to the question asked, the discrepancy cannot reasonably be interpreted as an attempt to solicit an incriminating response from Roybal; instead, the discrepancy seems to be the natural slippage between questions and answers that can occur in extemporaneous speech.  Nothing about Schultz's response appears designed to get Roybal to admit that he had in fact been driving recklessly before being pulled over.  In short, the finding of the Minnesota Court of Appeals that the incriminating statements by Roybal were offered voluntarily was not "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" and therefore cannot be overturned on habeas review.  28 U.S.C. § 2254(d)(2).

Even if the Minnesota Court of Appeals were unreasonable in its analysis — and this Court believes the opposite is true — the error was certainly harmless.  *See Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993); *Toua Hong Chang v. Minnesota*, 521 F.3d 828, 832 (8th Cir. 2008) ("[E]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, our analysis is not complete.  Specifically, we must apply *Brecht*'s harmless-error analysis . . . .").  Roybal's incriminating statement was relevant only to the question of whether Schultz had a reasonable, articulable suspicion to effect a traffic stop; it had no plausible bearing on the question of whether Roybal had, in fact, been driving while intoxicated.  And with respect to the legality of the traffic stop, the trial court's findings were based on Schultz's testimony and credibility, not on Roybal's admission.  *See Roybal*, 2014 WL 3557910, at *4; App'x at 84.  Thus, even if Roybal's statement had not been admitted into evidence, there is no reason to believe that the exclusion of this statement would

have influenced the trial court's findings regarding the legality of the traffic stop. In fact, there is no reason to believe that the proceeding was affected in any way by admission of the disputed statements. Any supposed error committed through admission of Roybal's statements was therefore necessarily harmless.

Roybal also suggests two other *Miranda* claims, which this Court will refer to as "secondary" *Miranda* claims. First, in his habeas petition, Roybal alleges that "[a]t the moment" he was placed under arrest, he was asked by Schultz whether he had ever been convicted for driving while intoxicated, to which he responded "'I've had 3 of them.'" Petition at 6. Second, in his reply brief, Roybal contends that Schultz told him that "'[a]fter I am done frisking you, you can let me know what is going on'" and that "'[y]ou can tell me whatever you need to tell me after [the frisk]. I'm going to have you turn around real quick.'" *See* Reply at 10. According to Roybal, this amounted to an invitation (or, perhaps, a demand) from Schultz to provide incriminating information following arrest.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations and quotations omitted). "To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id*.; *accord O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state

prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999).

Roybal has never presented *any* state court with these secondary *Miranda* claims, and those claims should therefore be dismissed for non-exhaustion.[3] Usually, dismissal of a claim for failure to exhaust state remedies is effected without prejudice, so that the petitioner may return to the state courts in order to present the claim to the state courts; the petitioner may then come back to the federal courts thereafter, if necessary, to seek relief on that claim. *Cf. Carmichael v. White*, 163 F.3d 1044, 1046 (8th Cir. 1998) (dismissing without prejudice habeas petition containing unexhausted claims). Despite this usual rule, this Court recommends that Roybal's unexhausted *Miranda* claims be dismissed *with* prejudice. Roybal's secondary *Miranda* claims are now foreclosed from being raised in state court through a petition for post-conviction review, as Minnesota law provides that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn.

---

[3]Respondent did not specifically argue that any aspect of Roybal's *Miranda* claims was unexhausted. That said, respondent did broadly argue in its answer that "federal habeas relief is not available to a state prisoner unless he has exhausted all available state court remedies." ECF No. 13 at 5. Respondent also argued that another of Roybal's claims should be dismissed for failure to exhaust state remedies. *See* ECF No. 13 at 13. This Court finds that respondent has thus not waived the exhaustion requirement. *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.").

1976).  Nothing prevented Roybal from raising every aspect of his *Miranda* claims on direct

appeal; the facts relevant to those claims were fully known to Roybal at the time of the appeal,

and Roybal raised other *Miranda* claims at various times during the course of the prosecution.

Because Roybal did not present his secondary *Miranda* claims on direct review, the *Knaffla* bar

precludes him from doing so now in state court.  As a result, those claims are procedurally

defaulted and cannot be the subject of federal habeas review at any time.  *See Coleman v.*

*Thompson*, 501 U.S. 722, 750 (1991).

In any event, Roybal's unexhausted *Miranda* claims, although not entirely fleshed out,

appear to be wholly meritless.  There is no indication that Roybal's statement to Schultz that he

had thrice before been convicted for driving while intoxicated was ever introduced into evidence

or otherwise used against him at trial, and thus the question of whether the statement should have

been suppressed is moot.[4]  Similarly, there is no indication that Schultz's invitation to Roybal to

speak following the frisk yielded any statement from Roybal, much less a specific statement

introduced at trial.  Ground Two may be dismissed with prejudice in its entirety.

*D.* McNeely *Claims*

Finally, in Ground Three, Roybal contends that the Supreme Court's recent *McNeely*

decision requires that the results of the urine test taken after he was transported to jail must be

excluded from evidence.[5]  *See* Petition at 6-7.  Implicit in Roybal's claim is the argument that

---

[4]To the extent that Roybal's prior convictions affected his sentence, the government
could introduce the *fact* of those convictions; it need not (and almost certainly would not) rely on
Roybal's *statement* to prove those convictions.

[5]It is doubtful that *McNeely* applies retroactively to cases on collateral review.  *See*
*Flying Horse v. Dooley*, No. Civ. 14-5079-JLV, 2015 WL 2381587, at *2 (D.S.D. May 19,
(continued...)

without the evidence derived from the urine test, he would not have been convicted. Thus, concludes Roybal, *McNeely* requires that his conviction be vacated. This Court finds that Ground Three must also be dismissed for at least two reasons. First, as with Ground One, Roybal is precluded under *Stone* from raising this claim on habeas review. Second, the determination of the Minnesota Court of Appeals that the admission of the results from the urine test did not violate *McNeely* was not contrary to, or involve an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).

"The Fourth Amendment protects against unreasonable searches, that is, searches that are neither authorized by a warrant nor within one of the specific exceptions to the warrant requirement." *United States v. Barraza-Maldonado*, 732 F.3d 865, 867 (8th Cir. 2013). "One well-recognized exception" to the warrant requirement "applies when the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011) (quotations omitted). Under this exigent-circumstances exception, law-enforcement officers may, in some circumstances, "conduct a search without a warrant to prevent the imminent destruction of evidence." *McNeely*, 133 S. Ct. at 1559 (citing *Cupp v. Murphy*, 412 U.S. 291 (1973) and *Ker v. California*, 374 U.S. 23 (1963)). Prior to *McNeely*, a handful of state supreme courts, including the Minnesota Supreme Court, had held that the natural dissipation of

_____

[5](...continued)
2015). That said, because Roybal's direct appeal was pending at the time *McNeely* was decided, the new rule announced in *McNeely* applies to Roybal. *See Danforth v. Minnesota*, 552 U.S. 264, 266 (2008); *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . . .").

alcohol in a person's bloodstream created a per se exigent circumstance that justified a warrantless, nonconsensual blood draw from an individual suspected of driving while intoxicated. *See State v. Shriner*, 751 N.W.2d 538 (Minn. 2008); *State v. Bohling*, 494 N.W.2d 399 (Wis. 1993). *McNeely* abrogated these cases, finding that a totality-of-the-circumstances approach must be taken by trial courts in all instances when determining whether the results of a nonconsensual blood test may be admitted into evidence. "In those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so."[6] *McNeely*, 133 S. Ct. at 1561.

*McNeely* was decided after Roybal was convicted, but before his appeal had been adjudicated by the Minnesota Court of Appeals. That court stayed Roybal's appeal so that he could return to the trial court and raise his *McNeely* claim in a petition for post-conviction relief. The trial court denied that petition for post-conviction relief as improperly raising a claim that should have been raised before trial, but the Minnesota Court of Appeals fully analyzed Roybal's *McNeely* claim on the merits and concluded that Roybal had freely and voluntarily consented to the urine test, thus obviating the need for Schultz to obtain a warrant before conducting the search. *See Roybal*, 2014 WL 3557910, at *6-7.

As with Ground One, Ground Three is squarely foreclosed by *Stone*. To begin, Roybal's claim under *McNeely* is a claim that evidence should have been excluded at trial pursuant to the

---

[6]This case, unlike *McNeely*, involves the allegedly nonconsensual testing of a urine sample, not a blood sample. Neither party has suggested that the analysis under *McNeely* would be different for urine samples, and so this Court assumes, for purposes of this recommendation, that *McNeely* applies with equal force to urine samples.

Fourth Amendment. Such a claim is generally inappropriate on federal habeas review. *See Siers v. Dooley*, No. Civ. 14-4007, 2014 WL 2600300, at *5 (D.S.D. June 10, 2014) (dismissing claim brought under *McNeely* pursuant in part to *Stone*). Further, although Roybal's *McNeely* claim was dismissed on procedural grounds by the trial court, the Minnesota Court of Appeals gave full consideration to the substance of that claim and found it to be without merit. *See Roybal*, 2014 WL 3557910, at *6-7. Indeed, the Minnesota Court of Appeals stayed Roybal's appeal to ensure that his *McNeely* claim could be appropriately and fully analyzed. Roybal cannot be said to have been deprived of a full and fair opportunity to litigate that claim in the state courts.

Even if this Court were to ignore the operation of *Stone*, Roybal still would not be entitled to relief. The exigent-circumstances exception is not the only exception to the Fourth Amendment's warrant requirement. Another exception exists where the defendant voluntarily consents to the search. *Cf. United States v. Anderson*, 688 F.3d 339, 343-44 (8th Cir. 2012) ("Voluntary consent of the person whose home or property has been searched is another recognized exception."). The Minnesota Court of Appeals concluded that the exigent-circumstances exception to the warrant requirement was unnecessary, as Roybal had consented to the search that resulted in the urine test. As pointed out by that court, Roybal "was read the implied consent advisory, indicated that he understood the advisory and did not wish to consult with an attorney, and agreed to provide a urine sample within an hour of arriving at the Ramsey County LEC." *Roybal*, 2014 WL 3557910, at *7. The Minnesota Court of Appeals also noted that nothing about Schultz's interaction with Roybal suggested that the urine test was anything less than voluntary. This Court cannot find that this was an unreasonable determination of the

facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). Moreover, although the

Minnesota Court of Appeals analyzed the question as a matter of state law, the relevant standards

are the same: Under either federal or Minnesota law, the government must show by a

preponderance of the evidence that the defendant freely and voluntarily consented to the search.

*Compare State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011), *with United States v. Golinveaux*,

611 F.3d 956, 959 (8th Cir. 2010) *and United States v. Alberts*, 721 F.2d 636, 640 (8th Cir.

1983). The Minnesota Court of Appeals correctly applied that standard. *See Roybal*,

WL 3557910, at *6-7. Thus, the decision of the Minnesota Court of Appeals was not contrary

to, and did not involve an unreasonable application of, federal law, either. *See* 28 U.S.C.

§ 2254(d)(1).

 Finally, Roybal argues that Minnesota's implied-consent statute — which provides that

any person who operates a vehicle within the state must provide a blood, breath, or urine sample

upon request from law-enforcement officers, *see* Minn. Stat. § 169A.51 — is unconstitutional, as

it "criminalize[s] the invocation of the constitutional right to be free from unreasonable searches

. . . ."[7] Petition at 7. Although characterized by Roybal as a *McNeely* claim, this argument

differs substantially from the claims decided in *McNeely*. The issue of consent was not at issue

---

 [7]Roybal did not raise this claim in his petition for review before the Minnesota Supreme Court. *See* App'x at 198-206 [ECF No. 14-1]. Respondent therefore argues that this claim has not been exhausted in the state courts and can be dismissed on that basis. "There is, however, a defense to the rule requiring the exhaustion of state remedies when it appears that such remedies are futile." *Hawkins v. Higgins*, 898 F.2d 1365, 1367 (8th Cir. 1990) (citing *Piercy v. Black*, 801 F.2d 1075, 1078 (8th Cir. 1986)). Since the conclusion of Roybal's appeal, the Minnesota Supreme Court has squarely rejected similar claims brought by another defendant regarding the constitutionality of Minnesota's implied-consent statute. *See State v. Bernard*, 859 N.W.2d 762, 773-74 (Minn. 2015). Any attempt by Roybal to raise this claim in the state courts would thus almost certainly prove futile. Accordingly, this Court does not recommend that the claim be dismissed for failure to exhaust state remedies.

in *McNeely*; the defendant in that case had clearly and unequivocally refused consent to the blood search, notwithstanding his state's implied-consent law. *See McNeely*, 133 S. Ct. at 1557. Law-enforcement officers nevertheless directed a lab technician to draw blood from the defendant. *Id*. *McNeely* concerned only whether courts must engage in a totality-of-the-circumstances analysis in determining whether the exigent-circumstances doctrine should apply to such a search, or whether the fact that blood dissipates in the blood created a per se exigent circumstance. Had the defendant in *McNeely* consented to the blood search (as the Minnesota courts have found Roybal had done), *McNeely* would have been an easy case, as the search would have been constitutional regardless of whether the exigent-circumstances exception applied.

   In any event, Roybal's claim regarding the constitutionality of Minnesota's implied-consent law, however that claim is labeled, must fail. *McNeely* expressly cited implied-consent laws as a valid alternative to reliance on the exigent-circumstances doctrine for law-enforcement officers looking to effect a search of a motorist's blood or urine. *See McNeely*, 133 S. Ct. at 1566. Indeed, the Supreme Court has more expressly given its blessing to implied-consent laws elsewhere:

> South Dakota, however, has declined to authorize its police officers to administer a blood-alcohol test against the suspect's will. Rather, to avoid violent confrontations, the South Dakota statute permits a suspect to refuse the test, and indeed requires police officers to inform the suspect of his right to refuse. This permission is not without a price, however. South Dakota law authorizes the department of public safety, after providing the person who has refused the test an opportunity for a hearing, to revoke for one year both the person's license to drive and any nonresident operating privileges he may possess. *Such a penalty for refusing to take a blood-alcohol test is unquestionably legitimate, assuming appropriate procedural protections.*

*South Dakota v. Neville*, 459 U.S. 553, 559-60 (1983) (citations omitted and emphasis added).[8]

Roybal's arguments regarding the unconstitutionality of the implied-consent statute are

foreclosed by *Neville* and *McNeely*. *See also Wall v. Stanek*, No. 14-2878, 2015 WL 4430495,

at *2-5 (8th Cir. July 21, 2015).

In any event, Roybal's argument regarding the constitutionality of the implied-consent

statute is beside the point in this case. The Minnesota Court of Appeals did not find that Roybal

had consented to the urine search solely due to the operation of the implied-consent statute.

Rather, the Minnesota Court of Appeals reached that conclusion after examining "'the totality of

the circumstances, including the nature of the encounter, the kind of person the defendant is, and

what was said and how it was said.'" *Roybal*, 2014 WL 3557910, at *7 (quoting *State v. Brooks*,

838 N.W.2d 563, 569 (Minn. 2013)). After examining all of those factors — not only the

existence and operation of the implied-consent statute — the Minnesota Court of Appeals

concluded that Roybal had consented to the urine search. *Id*. This Court cannot say that this

finding "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Ground Three should be

dismissed with prejudice as well.

### E. Certificate of Appealability

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless

he is granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R.

App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial

---

[8]Minnesota law provides for both administrative and, if requested, judicial review of the revocation of a driver's license pursuant to the implied-consent statutes. *See* Minn. Stat. § 169A.53.

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a

showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473,

484 (2000). No court, including the Eighth Circuit Court of Appeals, is likely to find that

Roybal is entitled to relief on any of the claims in his habeas petition. Accordingly, this Court

recommends that Roybal not be granted a COA in this matter.

## III. RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS

HEREBY RECOMMENDED THAT:

1.      Petitioner Kristopher Lee Roybal's petition for a writ of habeas corpus pursuant

to 28 U.S.C. § 2254 [ECF No. 1] be DENIED.

2.      This action be DISMISSED WITH PREJUDICE.

3.      No certificate of appealability be issued.


Dated: August 5, 2015                   *s/Tony N. Leung*

                                         Tony N. Leung
                                         United States Magistrate Judge


## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.